**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**LENORRIS EUGENE HARDY, SR,**

      **Plaintiff,**

**vs.**                                   **CASE NO. 6:23-CV-01794**

**MARCOS R. LOPEZ/IN HIS OFFICIAL
& LEGAL CAPACITY
AS SHERIFF OF OSCEOLA
COUNTY FLORIDA SHERIFF
OFFICE,**

      **Defendant.**

_____/

**FIRST AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL**

Lenorris Eugene Hardy, Sr, Plaintiff herein, files this First Amended Complaint against

MARCO R. LOPEZ IN HIS OFFICIAL & LEGAL CAPACITY AS SHERIFF OF

OSCEOLA COUNTY FLORIDA SHERIFF'S OFFICE.

**PARTIES**

1.     Plaintiff Lenorris Eugene Hardy, Sr, an individual, resides in Orange County,

Florida.

2.     Defendant, MARCO R. LOPEZ IN HIS OFFICIAL & LEGAL CAPACITY

AS SHERIFF OF OSCEOLA COUNTY FLORIDA SHERIFF OFFICE a County Sheriff

Office of Osceola County Florida.  Defendant brings this action in its Sheriff's capacity for

Osceola County Florida Sheriff's. Defendant has its principal place of business at 2601 E.

Irlo Bronson Memorial Hwy, Kissimmee, Florida 34744.

## JURISDICTION

3.        Plaintiffs bring this action pursuant 42 U.S.C. § 1983 for violations of civil rights under the Fourth, and Fourteenth Amendments to the United States Constitution.

4.        This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) (civil rights); 28 U.S.C. § 1367 provides supplemental jurisdiction over the state law tort claims that arose from the same common nuclei of facts.

5.        Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) and M.D. Fla. Loc. R. 1.02 (c). Defendants' primary place of business is in this district and division, and the defendants' independent and collective malicious and unlawful violations under color of state law of the plaintiff's constitutional rights giving rise to the claims herein accrued within this district and division.

6.        At all material times, the defendants committed these unlawful violations under color of state law in bad faith and with malicious purpose in reckless, wanton, and willful disregard of the plaintiffs' human, safety, and property rights.

7.        These constitutional law violations are "capable of repetition, yet evading review." *Roe v. Wade*, 410 U.S. 113, 125 (1973) (citing *Southern Pacific Terminal Co. v. ICC*, 219 U. S. 498, 515 (1911), *Moore v. Ogilvie*, 394 U. S. 814, 816 (1969), *Carroll v. Princess Anne*, 393 U. S. 175, 178-179 (1968), *United States v. W. T. Grant Co.*, 345 U. S. 629, 632-633 (1953).

## NATURE OF ACTION

8.    This is a 42 U.S. Code § 1983 federal civil rights case under

the Fourth Amendments of the United States Constitution as applied to the States

under the United States Constitution's Fourteenth Amendment for the defendants'

individual and collective personal, malicious, and unlawful violations under color of

state law of plaintiffs' individual and collective constitutional rights to protection

against unreasonable search of the plaintiff's home.

9.    Defendant's deputies as agents/officers for the Defendant in his official

and legal capacity committed these unlawful violations of the plaintiff's constitutional

and state rights under color of state law in bad faith and with malicious purpose in

reckless, wanton, and willful disregard of the plaintiff's human, safety, and property

rights.

## CONDITIONS PRECEDENT

10.    All conditions precedent to jurisdiction have occurred or

been complied with; a letter to the Sheriff demanding relief and a drafted civil complaint

was served with the Sheriff's Secretary, Victoria on August 16, 2023.

## FACTS

11.    On May 28, 2023, the Plaintiff's was at his home spending time

with his son. About 11:30pm the Plaintiff's son had left the plaintiff's home to head back to

his resident. Shortly thereafter, the Plaintiff's son called him to notify him that he had left

his laundry in the laundry room. Approximately five minutes after his son's call the Plaintiff

received a several rings from his doorbell and several loud and forceful knocks at his front

door. The Plaintiff assumed that these rings and knocks were his son's because he was not

expecting any other guest that late. The Plaintiff was concerned and wondered why his son

3

was ringing the doorbell and knocking on the door so loudly, when he had his own key. The Plaintiff got up and opened the kitchen, laundry room, and his garage door thinking that his son had left his key in the car. The plaintiff immediately texted his son and told him that the garage and laundry room were open. The plaintiff waited about five minutes after this and proceeded to secure his garage, laundry room, and kitchen door because that was sufficient time for his son to retrieve his laundry.  Upon entering his kitchen to proceed to the laundry room and then the garage the plaintiff discovered a tall Black Deputy an agent/officer representing the Defendant was standing in the plaintiff's kitchen's doorway that leads from the kitchen to the laundry room, and to the garage. This tall Black deputy had a flashlight in one hand shining such light in the plaintiff's face and had his other hand on his gun when the plaintiff approached his kitchen. The plaintiff was completely horrified, shocked, and confused seeing this Black deputy in his kitchen with his hand on his gun. This could have been a tragedy because the plaintiff could have been wrongfully killed in his own home when there were no exigent circumstances. After the plaintiff approached said Black deputy in his kitchen/laundry room's doorway the deputy asked the plaintiff why he did not have his home secured that late at night. The plaintiff explained that he thought that the tall Black deputy was his son because the plaintiff's son was on his way back to pick up his laundry that he just forgot about five minutes ago. The plaintiff begins walking forcefully toward his kitchen/laundry room doorway where this tall black deputy stood to remove him out of his kitchen, laundry room, and garage, and off his property. The tall black deputy proceeded to exit the plaintiff home stating the reason that he entered the plaintiff's home was because there were reports of some type of mischief going on in the plaintiff's residential area. This tall Black deputy stated that he was making sure that everything was all right in the

4

plaintiff's home because he saw his garage, laundry room, and kitchen door open. The plaintiff never gave this deputy or any deputies the consent to enter his home without proper cause, or without a warrant. Once the plaintiff forced this deputy out past his garage entry, he noticed the second deputy standing in the plaintiff's yard. This deputy was short and appeared to be Caucasian and the plaintiff has no knowledge if this deputy entered the home behind his partner the tall Black deputy. Apparently, the tall Black deputy did not believe plaintiff's statements regarding his son's return to pick up his laundry that late. The deputies had arrived in two separate vehicles and after the above incidents both deputies drove in the opposite direction from the plaintiff's residence and turned their vehicles around so that their vehicles would face the plaintiff's home. This was done so that they could establish whether the plaintiff's son was returning as the plaintiff stated. Immediately thereafter, the plaintiff's son returned to get his laundry. Upon entering the plaintiff's home, the plaintiff asked his son were there any officers parked down the street. Plaintiff's son replied, yes, he did see them prior to entering the plaintiff's home to pick up his laundry. At this time, the plaintiff refused to allow his son to leave in fear for his son's life, and the fear of some type of wrongful retaliation against the plaintiff's Black son for this violation by the Defendant's agents.

   12. On May 29, 2023, the plaintiff contacted the defendant several times for several confirmations to inquire if there were any reports of mischief going on in his residential area as the Black deputy had alleged. There are no records to support that there was any mischief going on at the time the tall black deputy alleged. This deputy fabricated his statements to cover up his violation against the plaintiff.

   13. On and about August 15, 2023, the plaintiff contacted the Sheriff

Lopez directly, speaking with his secretary, Victoria.

14.    On August 16, 2023, the defendant Sheriff Lopez received the plaintiff's letter demanding relief from damages and his drafted complaint which would be filed if there was no admission to wrongdoing and if there was not a settlement offer immediately thereafter. The defendant failed to respond which this refusal should bar the defendant any defense claims regarding proper notification.

15.    As a direct and proximate result of the actions of Defendant's agents, Plaintiff suffered emotional distress.

### COUNT I
### 42 U.S.C. § 1983 CLAIM OF FOURTH AMENDMENT ILLEGAL SEARCH AND SEIZURE OF PLAINTIFF'S HOME BY THE DEFENDANT'S AGENTS/DEPUTIES

16.    Plaintiff adopts by reference, as set out fully and completely in this Count, the following statements of this Complaint:  Paragraphs 1 through 15.

17.    Defendant, Marcos R. Lopez, in his official and legal capacity as the Sheriff of Osceola County Florida Sheriff's, by and through Defendant's agents, intentionally engaged in unlawful employment practices involving Plaintiff because of his race, color, and national origin.

18.    Defendant, by and through Defendant's agents, discriminated against Plaintiff in connection with their employment, terms, conditions and privileges of employment or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive him of his freedom; liberty; right to privacy; and his protection under the 42 U.S.C. Section fourth amendment.

19.    Defendant, Marcos R. Lopez, in his official and legal capacity as the Sheriff of Osceola County Florida Sheriff's, by and through Defendant's agents,

6

classified Plaintiff in a manner that deprived him of an equal right opportunity that was provided to other citizens similarly situated in violation of 42 U.S.C. Section.

20.     Plaintiff alleges that Defendant, Marcos R. Lopez, in his official and legal capacity as the Sheriff of Osceola County Florida Sheriff's, by and through Defendant's agents, alleges that the defendant discriminated against Plaintiff on the basis of race after running a background check on the plaintiff's residence prior to entry, color, and national origin with malice or with reckless indifference to the federal-protected rights of Plaintiff.

21.     Defendant, Marcos R. Lopez, in his official and legal capacity as the Sheriff of Osceola County Florida Sheriff's, by and through Defendant's agents, also violated Plaintiff's rights under 42 U.S.C. Section 1981.

## COUNT 2
## RESPONDEAT SUPERIOR AND RATIFICATION

22.     Plaintiff adopts by reference, as set out fully and completely in this Count, the following statements of this Complaint:  Paragraphs 1 through 15.

23.     At all times material to the act in question, the tall Black Deputy and the short Caucasian Deputy was within the course and scope of employment for Marcos R. Lopez, in his official and legal Capacity as the Sheriff of Osceola County Florida Sheriff's.

24.     At all times material to the act in question, the tall Black Deputy and the short Caucasian Deputy were engaged in the furtherance of Marcos R. Lopez, in his official and legal capacity as the Sheriff of Osceola County Florida Sheriff's business.

25.    At all times material to the act in question, the tall Black Deputy and the short White Deputy were engaged in accomplishing a task for which they were employed.

26.    Under the doctrine of respondeat superior, Marcos R. Lopez, in his official and legal capacity as the Sheriff of Osceola County Florida Sheriff's is responsible for the damages of Plaintiff proximately caused by the tall Black Deputy as the deputy in charge and the short White Deputy at the time of the incident.

**COUNT 3**
**PUNITIVE DAMAGES**

27.    Plaintiff adopts by reference, as set out fully and completely in this Count, the following statements of this Complaint:  Paragraphs 1 through 15.

28.    Marcos R. Lopez, in his official and legal capacity as the Sheriff of Osceola County Florida Sheriff has had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.

29.    The officers, directors, or managers of Defendant, Marcos R. Lopez, in his official and legal capacity as the Sheriff of Osceola County Florida Sheriff's, knowingly condoned, ratified, or consented to the conduct described above.

**COUNT 4**
**LEGAL FEES**

30.    Plaintiff has employed extensive legal expenses as pro-se for representation in this action,

31.    Plaintiff is entitled to recover reasonable legal fees incurred in connection

with this action pursuant to, inter alia, Section 760.11 of the Florida Statutes.

### DEMAND FOR JURY TRIAL

32.     Plaintiff demands a trial of this action by jury.

### DEMAND FOR JUDGMENT

**WHEREFORE**, Plaintiff demands a jury trial of this action, and further demands judgment against Defendants and each of them for general damages, punitive damages, specific relief, special damages, legal fees, and for such other and further relief, in law or in equity, to which Plaintiff may be justly entitled.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 28, 2024, a copy of the foregoing document was delivered to each person listed below by the method indicated. Ana C. Cuello/DeBevoise & Poulton, P.A., Attorney for Marcos R. Lopez, in his official and legal capacity as the Sheriff of Osceola County Florida Sheriff's 1035 S. Semoran Boulevard, Suite 1010 Winter Park, Florida 32792 by electronic filing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing.

Respectfully submitted,

*LENORRIS E HARDY*

**LENORRIS E. HARDY, SR**
**125 E. Pine Street #1107**
**Orlando, FL  32801**
**Telephone: (321) 213-0349**
**E-Mail: norrishardyii@gmail.com**